UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

DONALD SANDERS, DARNELL SANDERS, ON BEHALF OF HIMSELF AND D.S., AND SANDRA WIGFALL, ON BEHALF OF HERSELF AND INFANT T.S.,

                                        Plaintiffs,

-against-

CITY OF NEW YORK, DETECTIVE PETER HOEFLINGER, SHIELD NO 3870 OF NBBN, POLICE OFFICER ROBERT H. JONES, JOHN DOE POLICE OFFICERS 1-10,

                                        Defendants.

------------------------------------------------------------------- x

COMPLAINT AND JURY DEMAND

Docket No.

ECF CASE

GLEESON, J.

SCANLON, M.J.

Plaintiffs Donald Sanders, Darnell Sanders and Sandra Wigfall, by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint allege as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from three incidents in February, March and October, 2011 in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, unlawful searches, false arrests, false imprisonments, and malicious prosecutions which resulted in months of separation from their children.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff Sandra Wigfall resided at all times here relevant in Kings County, City and State of New York. She sues defendants on behalf of herself and on behalf of T.S., who is Donald Sanders' daughter over whom Ms. Wigfall has legal custody.

9. Plaintiff Darnell Sanders resided at all times here relevant in Kings County, City and State of New York. He sues defendants on behalf of himself and on behalf of D.S., his daughter.

10. Plaintiff Donald Sanders resided at all times here relevant in Kings County, City and State of New York. He sues defendants on behalf of himself.

11. The City of New York (or "the City") is a municipal corporation organized

under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

12. Police Officer Detective Robert Jones was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Jones was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Jones was under the command of the 73rd precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Jones was under the command of the 73rd precinct and is sued in his individual capacity regarding the February 5, 2011 arrest.

13. Detective Peter Hoeflinger was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Hoeftinger was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Hoeflinger was under the command of the Brooklyn North Narcotics on the date of the incident. On

information and belief, at all times relevant hereto, Defendant Hoeflinger was under the command of the Brooklyn North Narcotics and is sued in his individual capacity regarding the August 24, 2011 arrest.

14. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

15. Plaintiffs are mother and twin adult sons who, through February 2011 until October 2011, lived together in a duplex apartment on 363 Bristol Street, Apartment B in Brooklyn, New York. Sandra Wigfall, 52, uses a bedroom on the first floor and Darnell and Donald Sanders, both 34, each have their own separate bedrooms in the basement.

16. During the period of February 2011 through March 2012, plaintiffs' residence was subjected to multiple illegal searches and they were subjected to illegal arrests.

### FEBRUARY 5, 2011

17. On February 5, 2011, all three plaintiffs were asleep in their own separate bedrooms. Donald's 14-year-old daughter, T.S. (of whom Sandra Wigfall has legal custody) was sharing a room with Sandra Wigfall. D.S., Darnell's 9-year-old daughter, and D.G. (a cousin), were also staying in the apartment at that time.

18. Police from the 73rd precinct entered the apartment with a battering ram early in the morning displaying guns and riot shields.

19. Upon information and belief, they did not have a warrant authorizing their entry.

20. Police handcuffed everyone in the house for approximately 2 hours.

21. Even though a personal amount of marijuana was recovered from Darnell's dresser drawer, Sandra Wigfall and Donald Sanders were also arrested and everyone was charged for unlawful possession of marijuana under P.L. 221.05 (a violation) and three counts of endangerment of a child.

22. Donald Sanders and Sandra Wigfall did not know that Darnell had personal amount of marijuana in his dresser drawer inside his separate bedroom and were falsely accused of constructive possession of marijuana.

23. All three were put through the system, taken to the precinct, charged with violation marijuana possession and three counts of endangerment of a child (misdemeanors) and arraigned in front of a judge in Brooklyn Criminal Court.

24. Donald Sanders was charged under docket number 2011KN00979. Donald took an ACD on June 5, 2012 after being released at arraignments and going back to court several times.

25. Sandra Wigfall's docket number was 2011KN00980. Her case was dismissed on June 5, 2012.

26. Darnell Sander's docket number was 2011KN00981. His case was dismissed on June 5, 2012.

27. Donald's girlfriend came to the house to take custody of the children after everyone was arrested.

28. At the precinct, Sandra was handcuffed to a bench outside the men's holding cell for several hours.

29. All of them were individually interrogated regarding a homicide that occurred near their house within the week prior to their arrest.

30. As a result of these arrests for unlawful possession of marijuana for the personal amount of marijuana in Darnell Sanders' dresser drawer, the Court ordered Temporary Orders of Protection and the children were separated from their parents and guardians and the subject of Administration of Child Services investigations for several months.

31. During that time, plaintiffs could only visit their children in accordance with ACS visitation rules and supervision.

AUGUST 24, 2011

32. On August 24, 2011, police again stormed into plaintiffs' apartment, this time with dogs, guns and shields, and said they had a search warrant for Darnell Sanders.

33. Upon information and belief, they did not have a warrant authorizing their entry.

34. Darnell Sanders and Sandra Wigfall were arrested without probable cause for one count of endangerment of a child. As a result of this arrest, they were again subjected to a ACS investigation. They were both released on their own recognizance.

35. Sandra Wigfall was arrested under docket number 2011KN068596.

36. Darnell Sanders was arrested under docket number 2011KN068597.

37. Donald Sanders was not arrested on August 24, 2011.

38. Detective Peter Hoeflinger, the arresting officer in the case, has been previously sued for civil rights violations under Christian Sanchez v. the City of New York, et al, 12-cv-06115-WFK-JMA (pending); Grant v. LaCoste et al, 12-cv-03547-ENV-LB (settled $18,500); Nicholson v. City of New York, et al, 12-cv-02133-RRM-RML (settled $20,000); Brown v. City of New York et al, 11-cv-06074-NGG-SMG (settled, $10,000).

39. All charges were dismissed and sealed.

40. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

41. During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

## DAMAGES

42. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b. Violation of their rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c. Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d. Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

    e. Physical pain and suffering;

f. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety;

g. Loss of liberty.

FIRST CAUSE OF ACTION
42 U.S.C. § 1983
Unlawful Search and Seizure
(Against All Defendants)

43. The above paragraphs are here incorporated by reference.

44. The officer defendants wrongfully and illegally searched, arrested, detained and imprisoned plaintiffs.

45. The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

46. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

47. Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

48. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

49. All of this occurred without any illegal conduct by plaintiffs.

50. Plaintiffs consented to adjournments in contemplation of dismissal.

51. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their

jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

52. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: October 25, 2013
Brooklyn, New York

TO:
City of New York
100 Church Street
New York, NY 10007

Respectfully yours,

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com